UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 1:07-CR-84-TS |
| | ) | |
| THOMAS MOORE | ) | |

**OPINION and ORDER**

This matter is before the Court on the Defendant's Motion to Suppress Evidence [DE 14], filed November 19, 2007. The Defendant filed a Memorandum in Support of Motion to Suppress Evidence [DE 17] on December 10, 2007. The Government responded [DE 18] on January 7, 2008, and the Defendant replied [DE 19] on January 18, 2008.

The Defendant did not request a hearing to inquire into the veracity of the affiant under *Franks v. Delaware*, 438 U.S. 154 (1978). The inquiry is therefore limited to the four corners of the affidavit for the search warrant. *United States v. Peck*, 317 F.3d 754, 755–56 (7th Cir. 2003).

**MOTION TO SUPPRESS**

**A.   Background**

On September 26, 2007, the grand jury returned a two-count indictment against the Defendant. The first count charges that on or about August 23, 2007, the Defendant knowingly and intentionally possessed with intent to distribute a controlled substance, that is, five grams of a mixture or substance containing cocaine base, or crack, in violation of 21 U.S.C. § 841(a)(1). The second count charges that the Defendant, as a felon, knowingly possessed a firearm in and affecting commerce, in violation of 18 U.S.C. § 922(g)(1). The prior felony was a June 22, 2001, conviction for "Dealing in Cocaine or Narcotic Drug" in Allen Superior Court in Fort Wayne,

Indiana, Cause No. 02D04-0101-CF-14.

On August 23, 2007, members of the Fort Wayne Police Department executed a search warrant on 546 Pierce Avenue, Fort Wayne, Indiana. The search recovered evidence including a .45 caliber handgun, a .12 gauge shotgun, cocaine base, marijuana, and controlled substances in the form of pills. The Defendant was present during the search of that residence and he was arrested.

The search warrant was the result of a drug investigation involving three controlled purchases and the subsequent affidavit by Detective Kimberly Seiss of the Fort Wayne Police Department. The affidavit was signed on August 14, 2007, by Seiss, Jeffrey Stineburg, who is a Deputy Prosecuting Attorney for Allen County, and a judge of Allen Superior Court. The search warrant, also dated August 14, 2007, authorized the Fort Wayne Police Department to search the residence at 546 Pierce Avenue for cocaine, firearms, weapons, records of drug transactions or other financial information, and currency used to buy controlled substances from the Fort Wayne Police Department.

The warrant describes three "controlled buys" of narcotics using a confidential informant and police surveillance. For the first purchase, on July 30, 2007, Seiss met with the informant to arrange a controlled purchase of narcotics from a man known as Kelly at the residence located at 601 Pierce Avenue in Fort Wayne. Another detective searched the informant and found no contraband. The informant was given $80.00 in pre-recorded cash and driven to the area near 601 Pierce Avenue. The informant was seen entering the house at about 1:49 p.m. A little more than 20 minutes later, the informant left the house and returned to Detective Seiss with "an off white chunky substance believed to be crack cocaine." (Affidavit at 2; DE 18-2.) A field test of

the substance showed that it contained cocaine and weighed approximately 1.7 grams.

The affidavit lists two other instances of a controlled narcotics purchase using the same informant and the same procedures at the same house from a man named Marlin Kelly. For the purchase that is listed second in the affidavit, the informant used $130 and bought 1.9 grams of cocaine. The affidavit lists the date of that purchase as August 18, 2007.[1] For the purchase that is listed third and last in the affidavit, the informant used $250 and bought 1.7 grams of cocaine. The affidavit states that the date of that purchase was August 13, 2007. On all three occasions police kept the house under surveillance and observed the informant enter and exit the house.

The affidavit goes on to state that the informant told police "the supplier for Kelly at 601 Pierce is a male/black in his early twenties, with long braids and thin build, who goes by the name, 'Ghetto,' and lives across the street at 546 Pierce Ave." (Affidavit at 4; DE 18-2.) Police corroborated this information through surveillance during each controlled purchase. At the first purchase, police observed a black male matching the informant's description of the supplier cross the street and enter the house at 601 Pierce just prior to the transaction. During the second purchase, a lieutenant observed the same black male come from the area across the street from 601 Pierce and enter the house at 601 Pierce just before the drug deal. During the third purchase, Seiss states she "personally observed the suspected supplier exit 546 Pierce prior to entering 601 Pierce." (Affidavit at 4; DE 18-2.)

---

[1] The Court is aware that the search warrant and affidavit are dated on August 14, 2007, four days before August 18, 2007, which is when the affidavit states one of the controlled narcotics purchases took place. The Government in its Response states that, based on police records, the date of August 18 is a typographical error, and the date should be August 10. This makes sense in light of the chronology of the controlled purchases in the affidavit, and the Court accepts this explanation. The Court addresses the legal implications of this issue below in the analysis section. For the sake of clarity, references to the second purchase in the affidavit and this opinion mean August 10, 2007 (mistakenly typed as August 18), and references to the third purchase mean August 13, 2007.

The affidavit states that the informant "has proven in the past to be credible and reliable" and "has provided information and participated in controlled buys that have resulted in the seizure of narcotics and the arrest of numerous individuals for narcotics related offenses." (*Id.* at 5.)

Based on all that information and Seiss's experience as a police officer for more than five years, including training in drug enforcement, the affidavit states that the house at 546 Pierce Avenue may contain evidence of illegal narcotics dealing.

**B.      Standard for Suppressing Evidence Obtained From Executing a Search Warrant**

"The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983). "[T]he task of a reviewing court is not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984).

"When an affidavit is the only evidence presented to a judge in support of a search warrant, the validity of the warrant rests solely on the strength of the affidavit." *United States v. Peck*, 317 F.3d 754, 755–56 (7th Cir. 2003). "Probable cause is established when, based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *Id.* at 756.

>The magistrate judge's decision to issue a warrant "is to be given considerable weight" and should be overruled only when the supporting affidavit, read as a whole in a realistic and common sense manner, fails to allege specific facts and circumstances to allow the judge to reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated.

*United States v. Koerth*, 312 F.3d 862, 866–67 (7th Cir. 2002) (quoting *United States v. Spry*, 190 F.3d 829, 835 (7th Cir. 2002)).

Direct evidence linking the alleged crimes to a particular location is not necessary for probable cause to exist. *United States v. Lamon*, 930 F.2d 1183, 1188 (7th Cir. 1991). "An issuing court 'is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense.'"*Id.* at 1188 (quoting *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986)). "'In the case of drug dealers, evidence is likely to be found where the dealers live.'" *Id.* (quoting *Angulo-Lopez*, 791 F.2d at 1399).

When an informant provides information for a probable cause affidavit, courts "determine the legitimacy of the probable cause finding by assessing the informant's 'reliability, veracity and basis of knowledge.'" *United States v. Taylor*, 471 F.3d 832, 839 (7th Cir. 2006) (quoting *United States v. Olson*, 408 F.3d 366, 370 (7th Cir. 2005)).

>Where probable cause is based on information supplied by an informant, courts consider the following factors: "(1) the extent to which the police have corroborated the informant's statements; (2) the degree to which the informant has acquired knowledge of the events through firsthand observation; (3) the amount of detail provided; and (4) the interval between the date of the events and the police officer's application for the search warrant."

*United States v. Otero*, 495 F.3d 393, 398 (7th Cir. 2007) (quoting *Koerth*, 312 F.3d at 866). Courts also consider whether the informant testified at a probable cause hearing. *Taylor*, 471 F.3d at 839. "No one factor is dispositive, however. Each is simply a relevant consideration in the totality of the circumstances analysis." *United States v. Brack*, 188 F.3d 748, 756 (7th Cir.

1999) (citing *Illinois v. Gates*, 462 U.S. 213, 233 (1983)).

If the veracity of the affiant is not challenged, evidence obtained pursuant to a facially valid warrant issued by a neutral, detached magistrate is suppressed only if: "(1) the warrant is later invalidated; and (2) the police could not have relied in objective good faith upon the neutral and detached magistrate's decision to issue the warrant." *Koerth*, 312 F.3d at 865–66. In other words, the "*Leon* good faith exception allows the government to save evidence illegally obtained (e.g., by an invalidated search warrant) if the government can prove that the police relied in good faith on the judge's determination that probable cause supported the complaint for the search warrant." *United States v. Hobbs*, 509 F.3d 353, 359 n.4 (7th Cir. 2007) (citing *United States v. Leon*, 468 U.S. 897 (1984)).

> An officer's decision to obtain a warrant is prima facie evidence that she was acting in good faith. A defendant can rebut the presumption of good faith only by showing that the issuing judge abandoned his role as a neutral and detached arbiter, that the officers were dishonest or reckless in preparing the supporting affidavit, or that the affidavit was so lacking in probable cause that no officer could have relied on it.

*United States v. Mykytiuk*, 402 F.3d 773, 777 (7th Cir. 2005) (citation omitted).


**C.     The Search Warrant is Valid**

**1.     *Factors Weigh in Favor of Probable Cause Based on Informant's Information***

The police corroboration of the informant's information is strong in this case. The informant gave the police a physical description of the suspected supplier, his nickname, and the fact that he lived at 546 Pierce Avenue, "across the street" from 601 Pierce Avenue where the controlled drug transactions occurred. For each of the three controlled purchases, police observed a person matching this description enter the house at 601 Pierce Avenue shortly before

6

the transaction with the informant. That fact, alone, is some corroboration of the informant's information.

The Defendant argues that the informant's description "is not particularly specific and would describe a large population group within Fort Wayne." (Def. Reply at 1; DE 19.) The Defendant provides no legal authority to show that the description in this case is so lacking in specificity as to undermine the probable cause finding. And whether the description fits a large population group or not is beside the point, as the description matches the person whom the police observed coming from the area of or out of 546 Pierce Avenue and then entering the house at 601 Pierce Avenue just before each of the three drug transactions. "[S]earch warrants are for places and not for people." *United States v. Jackson*, 103 F.3d 561, 574 (7th Cir. 1996) (upholding probable cause for search warrant even when informant gave two very different descriptions of drug seller).

That brings up the second level of corroboration: police observation of where the suspected supplier *came from* before entering the drug transaction house. For the first purchase, the suspected supplier crossed the street before entering 601 Pierce Avenue. For the second purchase, he came from the area across the street. And for the third purchase, he was seen exiting 546 Pierce Avenue before entering 601 Pierce Avenue. This corroborates the informant's statement that the supplier "lives across the street at 546 Pierce Ave." (Affidavit at 4; DE 8-2 at 4.) Entering the house shortly before all three of the drug transactions, coupled with the corroborated description, gives rise to a reasonable, common sense inference that the suspect was indeed supplying drugs.

The next factor is the extent to which information was obtained through firsthand

7

observation. This is the main focus of the Defendant's attack. The Defendant contends that the affidavit does not include the factual basis the informant used to make his statement about the supplier. The Defendant is correct that the affidavit does not state that the informant observed the suspected supplier actually give the drugs to Kelly. Such an observation would be very useful to establish probable cause, but drug dealers do not necessarily run their operations as models of transparency, revealing the identity of all involved to any person they encounter. Such an observation also is not required. *United States v. Hollingsworth*, 495 F.3d 795, 805 (7th Cir. 2007) ("[W]e have repeatedly stated that a search warrant need not be based on first-hand observations.").

The informant's information is derived from his participation in drug transactions with Kelly. The informant is not a mere tipster reporting information passed on through several individuals. The informant's participation in the purchases bolsters his credibility. "Controlled buys add great weight to an informant's tip." *United States v. McKinney*, 143 F.3d 325, 329 (7th Cir. 1998). It is reasonable to infer that in the course of these transactions or others, the informant learned about Kelly's supplier, especially when that supplier lived across the street and entered the same house before each of the three transactions.

The third factor is the amount of detail provided. The informant provided a reasonably specific description, and this description was sufficient to allow the police to identify the suspected supplier when he entered the house at 601 Pierce Avenue before each of the three transactions. It is true that the informant did not provide details, such as the amount and cost of the drugs, of the transaction between the supplier and Kelly. However, as noted above, such detail is not required. *See Hollingsworth*, 495 F.3d at 805. The lack of details about the

8

interaction between the supplier and Kelly is countered by the actual cocaine the informant bought from Kelly shortly after the suspected supplier was in the same house. Under the *Gates* totality of the circumstances approach, the Court cannot say that the details are so sparse as to invalidate the state court judge's finding of probable cause.

Another factor is the interval between the date of the events and the police application for the search warrant. The first transaction, on July 30, 2007, was about three weeks before the application for and issuance of the warrant. The next controlled buy was on August 10, 2007, only four days before the warrant, and the final controlled buy was on August 13, 2007, the day before the warrant. This close time frame strongly supports a finding of probable cause.

The informant did not testify at the probable cause hearing, but this is not required. *See United States v. Brack*, 188 F.3d 748, 756 (7th Cir. 1999) ("No one factor is dispositive, however. Each is simply a relevant consideration in the totality of the circumstances analysis."). *See also United States v. Taylor*, 471 F.3d 832, 840 (7th Cir. 2006) (denying motion to suppress even though informant did not testify before the issuing judge because of strength of other factors and police attested to informant's prior reliability); *United States v. Singleton*, 125 F.3d 1097, 1104 (7th Cir. 1997) (informant not testifying at probable cause hearing was one of several "shortcomings . . . of little consequence" and did not invalidate probable cause finding). In this case, Seiss addressed the informant's credibility, *see Taylor*, 471 F.3d at 840, by pointing out the informant has "proven in the past to be credible and reliable." (Affidavit at 5; DE 18-2 at 5.) This was not just a conclusory statement; Seiss added that the informant "has provided information and participated in controlled buys that have resulted in the seizure of narcotics and the arrest of numerous individuals for narcotics related offenses." (*Id.*)

9

In conclusion, the factors for assessing an informant's information weigh in favor of finding that the informant's "reliability, veracity and basis of knowledge", *Taylor*, 471 F.3d at 839, were sufficient for the state judge to find there was probable cause to issue the search warrant in light of all the circumstances of the case.

**2.     *Other Issues***

The Defendant in his reply brief suggests there is something wrong with the affidavit because of the following sentence: "Based on training and experience, your Affiant has learned that it is common for drug traffickers to possess firearms on their person or in their homes." (Affidavit at 5; DE 18-2.) The Defendant believes it is strange that no assertion was made about drug traffickers keeping drugs in their homes since the officers seem to have believed that drugs were kept at 546 Pierce Avenue. "It would seem to be a natural implication that, if this is the theory, then Detective Seiss could say that this is a common practice." (Def. Reply at 4; DE 19.)

However, Seiss did state at the beginning of the affidavit that "she believes and has Probable Cause to believe" (Affidavit at 1; DE 18-2) that evidence of drug activity—including cocaine, records of drug transactions, and currency used by the police to buy drugs—is located at 546 Pierce Avenue. And the affidavit's last sentence states: "Your Affiant believes said building may contain evidence of the aforementioned offenses." (Affidavit at 5; DE 18-2.) The Seventh Circuit has made clear that probable cause affidavits are to be "read as a whole in a realistic and common sense manner." *United States v. Quintanilla*, 218 F.3d 674, 677 (7th Cir. 2000) (quoting *United States v. Spry*, 190 F.3d 829, 835 (7th Cir. 1999)). The Court reads the above-mentioned affidavit language to incorporate all the facts in the affidavit together with the supported, specific

10

suspicions of illegal activity. The omission noted by the Defendant does not undermine the basis for probable cause.

Next, the Defendant attacks the affidavit because of the error regarding the date of the second drug transaction. The affidavit lists the date as August 18, 2007, which obviously cannot be the case given that the affidavit and warrant are dated on August 14, 2007. As noted above, the Government states in its response that the second date should be August 10, 2007, and the "18" was a typographical error. (Govt. Resp. at 6 n.3; DE 18.) The Defendant states: "This oversight was obviously missed by the Judge, who must not have read very carefully the information in the Affidavit and the Government is reduced to trying to convince the Court to make assumptions about the information contained in the Affidavit." (Def. Reply at 4, DE 19.) The Defendant continues that the August 10, 2007, date "is obviously information that was not available to the Judge signing the warrant and not part of the Affidavit for Probable Cause." (*Id.*) The implication seems to be that the state judge should have excluded the second transaction from the consideration of probable cause because the state judge did not know the date was really August 10, 2007.

A typographical error in the affidavit does not necessarily invalidate a search warrant. *See United States v. Taylor*, 471 F.3d 832, 840 (7th Cir. 2006) (use of the phrase "concerned citizen" once in an attachment to the affidavit to describe a confidential source did not negate probable cause finding); *Zambrella v. United States*, 327 F.3d 634, 639 (7th Cir. 2003) (affirming district court's ruling that search warrant was proper when factual mistakes in affidavit regarding date of phone call and name of officer "were, at worst, the result of mere negligence" and defendant fell "far short of establishing . . . a reckless disregard for the truth,

11

much less . . . knowingly or intentionally [making] a false statement); *United States v. Jones*, 208 F.3d 603, 608 (7th Cir. 2000) (arguments based on a typographical error of one number in an address in the affidavit "are specious at best"); *United States v. Cruz*, 603 F.2d 673, 675 (7th Cir. 1979) (misidentification of a person in a search warrant affidavit for a drug case "was understandable under the circumstances and was not material to the determination of probable cause").

In this case, the typographical error was not material to the consideration of probable cause. The affidavit recounted three incidents to show that the suspected supplier was using the residence at 546 Pierce Avenue. Even if the state judge had considered only two of the incidents, a probable cause finding for a search warrant still would have been justified. Additionally, if the mistake had been noticed, the police simply would have corrected the mistake, but it would not have revealed some fatal flaw in their application for the warrant.

Last of all, even if the search warrant were to lack probable cause, the evidence found at 546 Pierce Avenue should not be suppressed because of the *Leon* good faith exception. There is no information to suggest that the police did not rely in good faith on the judge's determination of probable cause. The Defendant makes no explicit argument on this point: there is no suggestion that the state "judge abandoned his role as a neutral detached arbiter, that the officers were dishonest or reckless in preparing the affidavit, or that the affidavit was so lacking in probable cause that no officer could have relied on it." *United States v. Mykytiuk*, 402 F.3d 773, 777 (7th Cir. 2005) (citation omitted). The Defendant did not even use his complaint about the typographical error as an argument that the police were reckless or dishonest. Perhaps he did not do so because such an argument would be "specious at best," *Jones*, 208 F.3d at 608, as the

12

mistake was "at worst, the result of mere negligence" and falls "far short of establishing . . . a reckless disregard for the truth." *Zambrella*, 327 F.3d at 639.

## CONCLUSION

For the reasons stated in this opinion, the Defendant's Motion to Suppress [DE 14] is DENIED. This matter is now set for a final pretrial conference on March 3, 2008, at 1:15 p.m. (Fort Wayne time), and the trial is set for March 18, 2008, at 8:30 a.m.

SO ORDERED on February 4, 2008.

           s/ Theresa L. Springmann
          THERESA L. SPRINGMANN
          UNITED STATES DISTRICT COURT